```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

YUYAN LIN,
                                              MEMORANDUM AND ORDER
                                              21-cv-6203 (KAM)(MMH)
                    Plaintiff,

     -against-


AMAZON.COM, INC., AMAZON.COM SERVICES,
LLC,

                    Defendant.

----------------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge:**

Plaintiff Yuyan Lin, proceeding *pro se*, brings the instant Second Amended Complaint ("SAC") against Defendant Amazon.com Services LLC,[1] asserting a negligence claim under New York state law, as well as failure to accommodate claims under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

Presently before the Court is Defendant's motion to dismiss (ECF No. 48) the SAC (ECF No. 29) for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set

---

[1] Plaintiff's Second Amended Complaint also names Defendant "Amazon.com, Inc.," but Defendant, without disagreement by Plaintiff, states that "Amazon.com, Inc. is mis-named as a party to this action." (ECF No. 48 ("Def. Mem.") at 5.) Consequently, the Court deems Amazon.com Services, LLC, to be the proper party defendant and the caption shall be amended accordingly.

1

forth below, Defendant's motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

The Court recounts the following relevant facts set forth in the SAC, which are presumed true for purposes of considering Defendant's motion to dismiss.

### I. Plaintiff's Initial Employment and Requests for Transfer

Plaintiff was previously an employee of Defendant Amazon.com Services LLC ("Amazon" or "Defendant").[2] She was hired to work as a weekend reduced hour Single Pack packer at Amazon Fulfillment Center in Staten Island (JFK 8) in November 2018. Plaintiff was one of the best performers on the team, even receiving Christmas appreciation lottery tickets from her manager in December 2018 for her performance. (*Id.* ¶ 9.) Plaintiff was approved for maternity leave from January through March 30, 2019, and gave birth on January 20, 2019. (*Id.* ¶ 10.)

When Plaintiff returned to work on April 2, 2019, she requested a modification of her schedule due to childcare needs. She was designated to the "Picking" Department on April 8, 2019 and, due to not receiving other position offers, accepted the position on April 11, 2019. (*Id.* ¶¶ 12-14.) Plaintiff asserts

---

[2] The SAC does not explicitly state that Plaintiff was ever formally terminated or resigned from her employment at Amazon following her medical leave, discussed *infra*, but the Court infers that Plaintiff is no longer an employee.

2

that she accepted "without knowing any dangers or getting any warning about the Picker position." (*Id.* ¶ 14.)

Plaintiff initially exceeded the minimum requirements of the Picker role. (*Id.* ¶ 17.) In April of 2019, Plaintiff was working with a large order of heavy items, resulting in pain in her shoulder, arms, lower back, legs, and feet. (*Id.* ¶ 18.) The following day, Plaintiff was again assigned to the first-floor station, where she believed the heavy items were located. She then spoke to her manager, Rafael, emphasizing that she had just returned from maternity leave and could not endure such an intensive job. (*Id.* ¶ 19.) Plaintiff alleges that Rafael "did not agree [P]laintiff had a good reason to be accommodated or assign[ed] to light duty," refused Plaintiff's request to be moved from the first floor, and "affirmed that [P]laintiff should accept whatever [was] assigned to her." (*Id.* ¶ 20.) Plaintiff, realizing she could not remain in the Picker position, requested a transfer to another department in April, May, June, July, August, and September of 2019, requests which were all denied. (*Id.* ¶¶ 21-23.)

In May 2019, Plaintiff spoke with the onsite Human Resources department and the Single Pack Department Process Assistant (PA), and again requested a transfer to a different department. She was informed that she had to make her request through the Amazon "A to Z" website or must speak with a manager.

3

(*Id.* ¶¶ 23-24.)  After Plaintiff spoke with the department manager, the manager agreed to pull Plaintiff from the picking department to work in a different role on an as-needed basis.  (*Id.* ¶ 25.)  Plaintiff asserts that her new manager, Tommy, only sometimes agreed to let Plaintiff "be pulled out from [the] picking department."  (*Id.* ¶ 26.)

Many of Plaintiff's co-workers were aware that she was suffering from pain "due to [the] intensive work in her postpartum period" and Plaintiff was subsequently informed of the time and location of "light duty training."  (*Id.* ¶ 27.)  In June 2019, Plaintiff attended light duty training but was removed from the training and sent back to picking at the request of an unknown manager, who had spoken with Tommy, Plaintiff's manager.  (*Id.* ¶ 28.)

Plaintiff alleges that her work performance continued to deteriorate, as she "suffered more and more pain during her work." (*Id.* ¶ 29.)  Plaintiff received a "coaching" from another PA, who indicated that Plaintiff had a good reason for light duty work, as she had just returned from maternity leave.  Plaintiff proceeded to relay this information to Nicholas, Tommy's PA, who "declined that postpartum was a good reason" and stated that the light duty position was only for "limited, selected people."  (*Id.* ¶¶ 30-31.) Two of Plaintiff's coworkers were transferred to different departments.  Plaintiff alleges that one coworker was even assigned

4

to the light duty position after being on family leave for one month, even though that coworker did not have a disability or "any other medical condition." (*Id*. ¶¶ 32-33.)

## II. Plaintiff's Continued Injuries

Plaintiff's performance continued to decrease due to the increased severity of pain in her lower back, legs, arms, and neck, ultimately resulting in a second "coaching" in July 2019. (*Id*. ¶¶ 34-35.) On August 13, 2019, due to Plaintiff's increased difficulty standing and working, she went to the "M Care in JFK8 facility" for treatment and was instructed to go back to picking work the same day. Plaintiff took medical leave on September 5, 2019, due to her "diagnosis [of] bodily injur[ies]." (*Id*. ¶¶ 36-37.) On September 13, 2019, Lenox Hill Radiology NY found that Plaintiff had a "[m]ild disc bulge at L5-S1 with intravertebral dis[c] space narrowing and associated dis[c] desiccation." (*Id*. ¶ 38.) Plaintiff alleges having at least five additional medical visits regarding her pain, resulting in multiple injections and a surgery referral. (*Id*. ¶¶ 38-43.)

## **LEGAL STANDARD**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

5

570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id.*

When considering a motion to dismiss under Rule 12(b)(6), a district court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted). Where, as here, the plaintiff is proceeding *pro se*, pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213-14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)). Although liberally interpreted, a *pro se* complaint must still state a claim to relief that is plausible on its face, as the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

**DISCUSSION**

## I. Negligence

Plaintiff first asserts a state law negligence claim against Defendant. (SAC at 34.[3])

Under New York law, common law negligence claims arising from workplace injuries are "'precluded by New York Workers' Compensation Law, which provides the exclusive remedy for negligence claims against an employer.'" *Arbouin v. Bob's Disc. Furniture, LLC*, No. 20-cv-1893 (SJF)(SIL), 2021 WL 4813228, at *10 (E.D.N.Y. June 30, 2021), *report and recommendation adopted,* No. 20-cv-1893 (JMA)(SIL), 2021 WL 4458932 (E.D.N.Y. Sept. 29, 2021) (citing *Kelly v. N. Shore-Long Island Health Sys.,* 2014 WL 2863020, at *11 (E.D.N.Y. June 22, 2014)); *see also Dansler-Hill v. Rochester Inst. of Tech.*, 764 F. Supp. 2d 577, 585 (W.D.N.Y. 2011) (collecting cases) (citing N.Y. Workers' Comp. Law §§ 11, 29(6)).

The SAC unambiguously pleads that Plaintiff was injured in the course of her employment, which bars Plaintiff from asserting a negligence claim. (SAC ¶¶ 18, 27, 29, 129); *see also Axis Constr. Corp. v. Travelers Indem. Co. of Am.,* No. 22-cv-1125 (DRH)(ARL), 2021 WL 3912562, at *6 (E.D.N.Y. Sept. 1, 2021) ("The practical reality here is New York law *statutorily prohibits* [an employee] from naming his employer . . . as a negligent party

---

[3] All pagination pin citations refer to the page number assigned by the Court's CM/ECF system.

liable for his injuries."); *Reyes v. Crothall Healthcare, Inc.*, No. 17-cv-1003 (KAM)(VMS), 2019 WL 1050995, at *4 (E.D.N.Y. Mar. 5, 2019), *aff'd,* 794 F. App'x 132 (2d Cir. 2020) (summary order). There may be an exception to the exclusivity of the Workers' Compensation Law, however, in situations "where injury is sustained to an employee due to an intentional tort perpetrated by the employer or at the employer's direction." *Arbouin*, 2021 WL 4813228, at *10 (citing *Acevedo v. Consol. Edison Co. of New York*, 189 A.D.2d 497, 500, 596 N.Y.S.2d 68, 70 (N.Y. App. Div. 1st Dep't 1993)). To sufficiently plead the exception, "there must be alleged an intentional or deliberate act by the employer directed at causing harm to the particular employee." *Acevedo*, 189 A.D.2d at 501; *see also Lauria v. Donahue,* 438 F. Supp. 2d 131, 141 (E.D.N.Y. 2006) ("When it has been determined that a plaintiff's injury is the result of an intentional and deliberate act by the defendant or someone acting on his behalf, the defendant is not entitled to such immunity.").

Here, Plaintiff's allegations do not meet the high pleading standard to satisfy the exception. Plaintiff alleges, *inter alia*, that "Defendants clearly knew the hazards and the defect [sic] of [the] Picker position," and that "Defendants disregard[ed] the daily data [that] showed that pickers' performance drop[] sharply after long period[s] of walking. Defendants chose coaching, warning, discipl[in]ing or firing

8

pickers instead of improving defect[ive] task design and reducing irrational task requirement[s]." (SAC ¶¶ 120, 124.) Plaintiff also alleges in a conclusory manner that Defendant's actions were "outrageous, and demonstrated Defendants complete disregard [of] employees' health, public authority's requirement and Plaintiff's health and safety," and that she suffered and continues to suffer injuries and damages as a "direct and legal cause of serious or willful misconduct of Defendants." (*Id*. ¶¶ 128-29.)

Even liberally construing such allegations, they may, at best, invoke gross negligence or recklessness, which are "insufficient to establish an intentional tort so as to circumvent the Workers' Compensation Law." *Arbouin*, 2021 WL 4813228, at *10; *Lauria*, 438 F. Supp. at 142. Nothing in the SAC alleges that Defendant acted in an intentional manner in causing harm, let alone in causing harm specifically to Plaintiff — the "*particular employee*" at issue. *See Acevedo*, 189 A.D.2d at 501 (emphasis added). Accordingly, Plaintiff's first claim is dismissed with prejudice and without leave to amend a third time. The Court finds here that amendment would be futile because the problem with Plaintiff's negligence claim is "substantive" and "better pleading will not cure it." *See, e.g., Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).[4]

---

[4] Finally, although the issue was not raised by the parties and the Court need not reach it here, even if Plaintiff sufficiently pleaded an intentional tort

## II. NYSHRL Claim

Plaintiff also asserts a claim for failure to provide reasonable accommodations under the New York State Human Rights Law ("NYSHRL"). (SAC ¶¶ 131-34.)

### A. Legal Standard

Section 296(3)(a) of the NYSHRL states that it is an "unlawful discriminatory practice for an employer . . . to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of an employee . . . in connection with a job or occupation sought or held." N.Y. Exec. L. § 296(3)(a). A "pregnancy-related condition," in turn, is any "medical condition related to pregnancy or childbirth that inhibits the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques." *Id.* § 292(21-f).

An employer is liable for a failure to accommodate under the NYSHRL if: "(1) [the] plaintiff is a person with a disability under the meaning of the [applicable statute]; (2) an employer

---

claim (as required to be excepted from the exclusive remedy of the Workers' Compensation Law), there is a possibility that Plaintiff would "still be barred from maintaining a separate action against [her] employer because [she] has already accepted workers' compensation benefits." *Greco v. Staten Island Univ. Hosp.*, No. 99-cv-7401(DGT), 2000 WL 804634, at *3 (E.D.N.Y. May 1, 2000) ("A plaintiff loses his right to sue his employer, even where he has been injured intentionally, by choosing to avail himself of workers' compensation.") (citing *Werner v. State of New York*, 424 N.E.2d 541 (N.Y. 1981)). Here, the SAC asserts that Plaintiff received (at least some) workers' compensation for her alleged injuries. (SAC ¶¶ 109-11.)

10

covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Lawtone-Bowles v. City of New York*, No. 17-cv-8024, 2019 WL 652593, at *6 (S.D.N.Y. Feb. 15, 2019) (quoting *McMillan v. City of New York,* 711 F.3d 120, 125-26 (2d Cir. 2013)). Here, notwithstanding that the Court assumes the truth of the well-pleaded allegations in the SAC, the first three elements are in dispute.

### B. Analysis

#### 1. "Disability" Under the NYSHRL

Defendant argues that Plaintiff has failed to sufficiently plead that she is a person with a disability because "Plaintiff's only purported condition is that she was in the postpartum period." (Def. Mem. at 11.) Courts in the Second Circuit generally find that pregnancy itself is not necessarily a disability requiring accommodation. *See, e.g., LaBarbera v. NYU Winthrop Hosp.,* 527 F. Supp. 3d 275, 303 (E.D.N.Y. 2021), *appeal dismissed* (2d Cir. July 7, 2021) ("[P]regnancy itself is not a statutory 'pregnancy-related condition.'"); *Sam-Sekur v. Whitmore Grp., Ltd.,* No. 11-cv-4938 (JFB)(GRB), 2012 WL 2244325, at *7 (E.D.N.Y. June 15, 2012) (collecting cases). Further, although Plaintiff devotes a significant portion of the SAC to describe articles and other sources discussing the postpartum period and

the physiological impact of pregnancy and the postpartum period on the human body (SAC at 7-16), Plaintiff does not clearly allege that she herself experienced these conditions during her pregnancy or after she gave birth.

Importantly, however, the NYSHRL (as well as the NYCHRL, *see infra*) has a "broader definition of 'disability' than does the ADA," and does not require "any showing that the disability substantially limits a major life activity." *Arazi v. Cohen Bros. Realty Corp.,* No. 20-cv-8837 (GHW), 2022 WL 912940, at *7 (S.D.N.Y. Mar. 28, 2022) (citing *Thomson v. Odyssey House,* No. 14-cv-3857 (MKB), 2015 WL 5561209, at *18 (E.D.N.Y. Sept. 21, 2015), *aff'd,* 652 F. App'x 44 (2d Cir. 2016) (summary order) (citation omitted)).

Here, Plaintiff alleges that, upon her return from maternity leave and assignment to the picker position, her "shoulder, arms, lower back, legs and feet got hurt badly" during a shift where she received a "large percentage order of heavy items when she was working at her picking station." (SAC ¶ 18.) She also alleges that many of her co-workers "knew that Plaintiff was suffering pain due to intensive work in her postpartum period." Plaintiff further alleges that, in August 2019, she went to a care center at her Amazon facility for treatment because "her pain [in her] lower back, legs, arms and neck became more severe" and that she found it "difficult[] to stand and work." (*Id.* ¶¶ 27, 35.) Plaintiff also asserts that she was "struggling [to accept] her

12

disability, and [] the truth that she turn[ed] from one of the fastest performers of the team to [] one of the slowest." (*Id.* ¶ 116.)

The Court finds that, at this stage of the action, these allegations are sufficient, in light of the "broader definition" of disability in the NYSHRL context. *See Arazi*, 2022 WL 912940, at *7; *see also Romanello v. Shiseido Cosms. Am. Ltd.*, No. 00-cv-7201 (JGK), 2002 WL 31190169, at *7 n.2 (S.D.N.Y. Sept. 30, 2002) (collecting cases), *aff'd*, 71 F. App'x 880 (2d Cir. 2003) (summary order); *Adams v. Delta Airlines, Inc.*, No. 16-cv-1986 (KAM) (LB), 2017 WL 9674513, at *5 (E.D.N.Y. Dec. 18, 2017), *report and recommendation adopted as modified*, No. 16-cv-1986 (KAM) (LB), 2018 WL 1532434 (E.D.N.Y. Mar. 29, 2018) (holding that, "[l]iberally construing plaintiff's Amended Complaint, [plaintiff's allegations that] she suffers from left knee pain related to ligament sprains, strains, and tears . . . sufficiently plead[] a physical impairment"); *cf. Glenn v. Kaleida Health*, No. 17-cv-0025 (LJV), 2017 WL 3727313, at *7 (W.D.N.Y. July 7, 2017) (finding that a plaintiff's "general" allegations of being "disabled within the meaning of the ADA" and that she "sustained a shoulder injury at work" that was a "disabling condition" and left her "not always able to physically perform some of her duties due to her disability" were sufficient at the motion to dismiss stage); *Rice v. Wayne Behav. Health Network,* No. 09-cv-6391T, 2010

13

WL 811325, at *4 (W.D.N.Y. Mar. 3, 2010) ("[P]laintiff's allegation of suffering from a disability, or being perceived as suffering from a disability, sufficiently pleads that element of a cause of action for discrimination. Whether or not his alleged disabilities constitute disabilities under the ADA is a question not ripe for adjudication at this stage of the proceeding.").

Accordingly, the Court finds that Plaintiff has sufficiently pleaded a "disability" under the NYSHRL standard. *See, e.g., Shi v. Batgatelle Int'l, Inc.,* No. 20-cv-8473 (ER), 2023 WL 4187557, at *8 n.1 (S.D.N.Y. June 26, 2023) ("The standards for establishing disability under the NYSHRL and the NYCHRL are more lenient than those under the ADA.").

### 2. Employer Notice

Defendant also argues that Plaintiff failed to plead that she "provided notice to Defendant of any disability or pregnancy-related condition" and that Plaintiff "does not allege that she told any supervisor of a specific pregnancy-related condition." (Def. Mem. at 13-14.) As stated above, Plaintiff alleges that, in April 2019, her "shoulder, arms, lower back, legs and feet got hurt badly" during a shift where she received a "large percentage order of heavy items when she was working at her picking station." (SAC ¶ 18.) Plaintiff alleges that, the next day, she was assigned to the same location and then talked to her manager, emphasizing that "she just came back from her maternity leave and

14

*could not endure such an intensive job.*" (*Id.* ¶ 19 (emphasis added).) Her manager "did not agree" that Plaintiff "had a good reason to be accommodated or assign[ed] to light duty," and refused her request to be removed from the first floor where she had been working. (*Id.* ¶ 20.) Plaintiff further alleges that in June 2019, she spoke with a PA (Process Assistant) who "told Plaintiff that she had a good reason for light duty because she just came back from her maternity leave," but that when Plaintiff relayed this to another PA, "Nicholas," he disagreed that being postpartum was a good reason and stated that the "light duty" job was only for "limited, selected people." (SAC ¶¶ 30-31.)

Based on these allegations, Plaintiff did more to notify her employer that she had a purported disability and was requesting accommodation than "merely stating that she had returned from maternity leave or that she was in the postpartum period." (Def. Mem. at 14.) Plaintiff specifically informed her manager of the context that she had come back from maternity leave and thus "could not endure such an intensive job." (*See* SAC ¶ 19.) The Court accordingly disagrees with Defendant's characterization that Plaintiff's "complaints appeared mundane based on her position and about the exertions her position entailed," (Def. Mem. at 14) and finds that Plaintiff sufficiently alleges that she notified her supervisor of her condition.

15

### *3. Performing Essential Functions of the Job with Reasonable Accommodation*

The Court finds that Plaintiff has sufficiently pleaded that with reasonable accommodation, she could perform the essential functions of her job to survive a 12(b)(6) motion to dismiss. Here, Plaintiff returned to work from maternity leave on April 2, 2019. (SAC ¶ 12.) Plaintiff alleges that, after being assigned to the Picker position, she "tried her best to meet the company's requirement and performed exceeding the minimum standard at her job . . . after [the] second week of the training." (*Id.* ¶ 17.) Thereafter, Plaintiff experienced pain when performing a particularly heavy task and requested accommodation. Plaintiff therefore sufficiently and satisfactorily performed the requirements of the Picker position for at least some time. This, in turn, supports the plausible inference that with some accommodation, Plaintiff could have reasonably continued to perform the Picker role.

The Court notes that both cases upon which Defendant heavily relies in its memorandum of law, *McBride* and *Pimentel*, were based on summary judgment motions. *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92 (2d Cir. 2009); *Pimentel v. Citibank, N.A.*, 29 A.D.3d 141, 811 N.Y.S.2d 381 (N.Y. App. Div. 1st Dep't 2006). Indeed, the Court finds that development of salient facts — such as "relevant factors that may influence a court's ultimate

16

conclusion as to a position's essential functions," *Sohnen v. Charter Commc'ns, Inc.,* No. 18-cv-6744 (LDH)(RLM), 2022 WL 900602, at *4 (E.D.N.Y. Mar. 28, 2022) (quoting *McMillan v. City of New York,* 711 F.3d 120, 126 (2d Cir. 2013)) — may be appropriate, and accordingly, their assessment is better suited for a motion for summary judgment. *See, e.g., Tafolla v. Heilig*, No. 21-2327, 2023 WL 5313520, at *5 (2d Cir. Aug. 18, 2023) (in reviewing a summary judgment appeal, noting that "[t]o determine a position's 'essential functions,'" a court "conduct[s] a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice" (internal quotations and citation omitted)); *see also Campbell v. IPsoft Inc.,* No. 18-cv-10684 (DF), 2021 WL 4248861, at *20 (S.D.N.Y. Sept. 17, 2021); *Lawtone-Bowles*, 2019 WL 652593, at *6 ("Ultimately, a factual determination on the feasibility of 'light duty' — specifically, whether it was reasonable and how it would have impacted the 'essential functions' of her job — is more appropriate at the summary judgment stage."); *cf. Noll v. Int'l Bus. Machs. Corp.,* 787 F.3d 89, 94 (2d Cir. 2015) ("The reasonableness of an employer's accommodation is a fact-specific question that often must be resolved by a factfinder.") (quotations and citation omitted)).

### III. NYCHRL Claim

Plaintiff also alleges sufficient facts to state a claim under the NYCHRL. Section 8-107(22) of the NYCHRL provides, in part, that it is an unlawful discriminatory practice for an employer to refuse to provide a reasonable accommodation "to the needs of an employee for the employee's pregnancy, childbirth, or related medical condition that will allow the employee to perform the essential requisites of the job, provided that such employee's pregnancy, childbirth, or related medical condition is known or should have been known by the employer." *See* N.Y.C. Admin. Code § 8-107(22).

Although the NYCHRL follows "the same general framework as . . . the NYSHRL," *Brown v. Metro. Dental Assocs.,* No. 21-cv-851 (CM), 2023 WL 5154415, at *7 (S.D.N.Y. Aug. 10, 2023), NYCHRL claims should be considered "separately and independently from any federal and state law claims, construing [the NYCHRL's] provisions broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible." *See Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 75 (2d Cir. 2015) (internal quotations and citation omitted). Here, because Plaintiff's failure to accommodate claim survives analysis under the NYSHRL, it "necessarily survive[s] the more liberal standard of the NYCHRL." *Brown*, 2023 WL 5154415, at *7; *see also, e.g., Farmer v. Shake Shack Enters., LLC,* 473 F. Supp. 3d 309, 327 (S.D.N.Y. 2020)

18

("Because Farmer has adequately pled sex-discrimination claims under . . . [the] NYSHRL, her similar claim under the broader NYCHRL also necessarily survives."). The Court therefore denies Defendant's motion to dismiss Plaintiff's NYCHRL claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Second Amended Complaint is GRANTED in part and DENIED in part. In light of this Memorandum & Order, the parties are referred to Magistrate Judge Henry for supervision of continued settlement discussions, remaining discovery, and pre-trial issues as appropriate.

**SO ORDERED.**

DATED:   September 5, 2023
         Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge