UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------X

YUYAN LIN,

         *Plaintiff*,

   - against –

AMAZON.COM SERVICES, LLC,

         *Defendant*.

-----------------------------------X

<u>**MEMORANDUM & ORDER**</u>

21-CV-6203 (KAM)(MMH)

**KIYO A. MATSUMOTO, United States District Judge:**

    Plaintiff Yuyan Lin ("Lin" or the "Plaintiff") commenced this diversity action on November 8, 2021, against Defendant Amazon.com Services, LLC, ("Amazon" or the "Defendant"), alleging violations of New York City Human Rights Law, Administrative Code of the City of New York § 8-101 et seq. ("NYCHRL") and the New York State Human Rights Law, Executive Law § 296 et seq. ("NYSHRL") as a result of Amazon's failure to reasonably accommodate Plaintiff's requests for lighter duty following her return from maternity leave. (ECF No. 1, Complaint ("Compl.") ¶¶ 1-6.) Plaintiff subsequently amended her complaint, (ECF No. 13, First Amended Complaint), and then, after the withdrawal of her counsel, amended her complaint for a second time while proceeding *pro se*, adding in an additional state law negligence claim against Amazon, (ECF No. 29, Second Amended Complaint ("SAC")). Defendant previously moved to dismiss

the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 47, Motion to Dismiss.) On September 5, 2023, the Court granted the Defendant's motion to dismiss the state law negligence claim and denied dismissal of the NYSHRL and NYCHRL claims. (*See* ECF No. 61, M&O.) Defendant now moves for summary judgment as to Plaintiff's remaining causes of action alleging that Amazon failed to reasonably accommodate Plaintiff's requests for lighter duty following her maternity leave.

For the reasons set forth below, the Court finds no genuine disputes of material fact and **grants** Defendant's motion for summary judgment with respect to Plaintiff's remaining claims which are **dismissed** with prejudice.

## BACKGROUND

I.   **Factual Background**

The following facts are taken from the Defendant's Local Rule 56.1 statement, and from documents and transcripts cited in the Defendant's Local Rule 56.1 statement and attached to the motion for summary judgment. (*See* ECF No. 66, Defendant's Local Rule 56.1 Statement ("Def. 56.1").) Rather than either admitting or denying the statements made in the Defendant's Rule 56.1 Statement, Plaintiff instead submitted a declaration responding to the Defendant's list of exhibits, stating that she had not seen several of the annexed documents "before this action." (ECF No. 71,

2

Plaintiff's Response regarding Defendant's Declaration of Discovery Evidence ("Pl. Resp.").) Plaintiff's objections to the evidence, which mainly appear to assert that she had not seen several documents prior to the initiation of litigation, do not challenge the authenticity of the documents and the Court may properly consider them on summary judgment even without authentication as would be required at trial. *Daniel v. UnumProvident Corp.*, 261 F. App'x 316, 319 (2d Cir. 2008) (summary order) ("a party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party").

Because the Plaintiff failed to controvert the facts set forth in the Defendant's Rule 56.1 Statement, the Court may deem the facts admitted. *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). Nonetheless, as the Second Circuit has instructed, "the local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Id.* (internal quotation marks and citation omitted). Therefore, the Court will consider only those assertions in the Defendant's Rule 56.1 Statement which are supported by evidence in the record that would be admissible at trial.

Except as otherwise indicated, the facts set forth below from the Defendant's Local Rule 56.1 statement are undisputed. The court summarizes only those facts that are relevant and material to the adjudication of the instant motion.

Plaintiff was hired by Amazon on November 2, 2018, to serve as a "Fulfillment Associate" in the "Picking Department" of Amazon's fulfillment center located in Staten Island, New York – the center is referred to by Amazon as "JFK8." (Def. 56.1 ¶ 1.) According to Amazon's job description for the Fulfillment Associate role, Fulfillment Associates work in Amazon warehouses (a term the company uses interchangeably with "fulfillment center") to select, pack, and ship orders of Amazon's customers. (*Id.* ¶ 2.) At the time Plaintiff was hired by Amazon, she was approximately seven months pregnant. (ECF No. 84-1, Deposition of Yuyan Lin ("Pl. Dep."), at 116-17.) Plaintiff subsequently gave birth on January 20, 2019, and Amazon granted Plaintiff's request to go on leave for the birth of her child through early April 2019. (Def. 56.1 ¶¶ 4-6.) Plaintiff did not receive any medical treatment after the birth of her baby, and her doctor did not provide her with any instructions regarding limitations on activity post-birth. (Pl. Dep. at 121.)

While Plaintiff was on leave in March 2019, she called Amazon's Employee Resources Center to request a new position when she returned to work. (Def. 56.1 ¶ 7.) On a March 26, 2019, call,

the Amazon representative instructed Plaintiff how to apply for a
new position, and Plaintiff subsequently put in a request using an
Amazon-internal application, "Amazon A to Z," to change her
schedule based on "childcare issues." (*Id.* ¶¶ 8-9; Pl. Dep. at
127-28.) When Plaintiff requested the new schedule, she was
presented with several available positions for that time, and she
selected "single pack, pack flow, and picking" as her choices.
(Pl. Dep. at 127.) Amazon appointed Plaintiff to the picking
position, which was one of the options Plaintiff selected, and
Plaintiff accepted the offer on April 11, 2019. (*Id.* at 127-28;
SAC ¶ 14.)

After Plaintiff was selected for the picking position, she
went through three days of training beginning on April 15, 2019,
and was instructed that she would begin in the position with a
three-week probationary period where she did not need to meet
Amazon's otherwise applicable performance metrics. (Pl. Dep. at
78-79; ECF No. 67-10, Exhibit 10 to the Freedberg Declaration in
Support of Defendant's 56.1 Statement ("Ex. 10"), at 1.) Plaintiff
testified at her deposition that upon starting the new position,
she felt fine, but due to repeated lifting, she began experiencing
some discomfort, soreness, and pain, which worsened over time.
(Pl. Dep. at 99.) Amazon has performance records for Plaintiff
beginning on May 22, 2019, which show that she initially exceeded
Amazon's productivity performance metrics for her position in May

2019, before dropping to 93-94% of expected performance in June 2019. (ECF No. 67-18, Exhibit 18 to the Freedberg Declaration in Support of Defendant's 56.1 Statement ("Ex. 18"), at 1.) On July 10, 2019, Plaintiff was given feedback by a manager that she was not meeting productivity expectations. (*Id.* at 1-2.)

Beginning on June 30, 2019, and again on July 31, 2019, and August 31, 2019, Plaintiff began requesting reassignment from the picking position to either the single pack or pack flow positions. (ECF No. 67-21, Exhibit 21 to the Freedberg Declaration in Support of Defendant's 56.1 Statement ("Ex. 21"), at 1.) Amazon denied Plaintiff's requests. (*Id.*) On August 26, 2019, Plaintiff reported at the start of her shift that she was feeling pain in her lower back, and was taken for treatment at Amazon's on-site healthcare provider, AMCARE. (ECF No. 67-23, Exhibit 23 to the Freedberg Declaration in Support of Defendant's 56.1 Statement ("Ex. 23"), at 1.) Plaintiff reported that she had actually injured herself on the job around August 12, 2019, but that she did not report the injury because she thought the pain would go away. (*Id.*) Amazon's internal notes for Plaintiff's injury attribute it to her failure to "properly bend at the knee and/or squat[] when retrieving an item from one of the bottom bins." (*Id.*)

Plaintiff reported to AMCARE for daily follow-up treatment from August 27 through August 29, 2019, and then again from

September 2 through September 4, 2019. (*Id.* at 6-12.) Plaintiff testified at her deposition that Amazon applied for Worker's Compensation on her behalf on September 5, 2019, and that she had been receiving Worker's Compensation payments from September 2019 to the date of her deposition. (Pl. Dep. at 51.) On September 6, 2019, Plaintiff subsequently went on a leave of absence from Amazon and has not returned to work at Amazon since that time. (*Id.* at 57; Def. 56.1 ¶ 31.)

## II.  Procedural Background

Plaintiff, initially represented by counsel, brought the instant case on November 8, 2021, alleging violations of the NYSHRL and NYCHRL by Amazon. (*See generally* Compl.) Plaintiff's counsel submitted a First Amended Complaint on March 24, 2022, (ECF No. 13), but subsequently moved to withdraw from representation of Plaintiff on April 28, 2022, (ECF No. 16). Magistrate Judge Henry held a status conference regarding Plaintiff's counsel's motion to withdraw on May 17, 2022, and granted the motion. (Minute Entry dated May 17, 2022.) After an unsuccessful settlement conference, Plaintiff, now proceeding *pro se*, moved to amend her complaint on July 7, 2022. (ECF No. 25.) Plaintiff's request to amend her complaint stated that the previous First Amended Complaint "did not reflect plaintiff's will" and that "[t]here is no factual discrimination content or issue in this case." (*Id.*)

This Court held a conference at which it discussed and granted Plaintiff's request for leave to amend on July 21, 2022, and directed Plaintiff to file her Second Amended Complaint by August 4, 2022.  (Minute Entry dated July 21, 2022.)  Plaintiff subsequently filed the SAC on July 25, 2022.  (*See generally* SAC.)  Defendant moved to dismiss Plaintiff's complaint, and the Court granted the motion in part, dismissing Plaintiff's state law negligence claims, but otherwise allowing the NYSHRL and NYCHRL claims to proceed on September 5, 2023.  (ECF No. 61, M&O.)  The parties continued with discovery under the supervision of Judge Henry while the motion to dismiss was being briefed and pending decision.  On October 10, 2023, Magistrate Judge Henry certified the close of discovery, and Defendant indicated that it intended to proceed with requesting a pre-motion conference in anticipation of filing a motion for summary judgment.  (Minute Entry dated October 10, 2023.)

This Court held a pre-motion conference to discuss Defendant's anticipated motion on January 25, 2024.  (Minute Entry dated January 25, 2024.)  At the conference, the Court explained a motion for summary judgment to Plaintiff and the requirement that an opposition to a Rule 56.1 Statement must respond to each numbered paragraph in the statement and provide admissible evidence in support of the opposition, and also set a briefing schedule.  (*Id.*)  Defendant filed the fully-briefed motion for

summary judgment on March 22, 2024.  (ECF No. 75, Notice of Motion for Summary Judgment; ECF No. 76, Defendant's Memorandum of Law in Support ("Def. Mem."); ECF No. 77, Defendant's Declaration in Support of Motion for Summary Judgment; ECF No. 78, Plaintiff's Memorandum in Opposition ("Pl. Mem."); ECF No. 79, Plaintiff's Affirmation in Opposition ("Pl. Aff."); ECF No. 80, Affirmation of Kriti Acharya; ECF No. 81, Defendant's Reply Memorandum of Law in Further Support ("Def. Reply").)  Defendant also filed a copy of the January 25, 2024, letter it submitted to Plaintiff containing Local Rule 56.2, given Plaintiff's status as a *pro se* litigant. (ECF No. 83, Defendant's Local Rule 56.2 Declaration.)  The Court subsequently requested that a complete copy of Plaintiff's deposition transcript be filed on the docket on August 15, 2024, and Defendant complied on the same day.  (ECF No. 84.)

## LEGAL STANDARD

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986) (emphasis in original).   A fact is material if it
"might affect the outcome of the suit under the governing law,"
and a dispute is genuine "if the evidence is such that a reasonable
jury could return a verdict for the nonmoving party." *Id.* at 248.
For a genuine issue of material fact to exist, there must be
"sufficient evidence favoring the nonmoving party for a jury to
return a verdict for that party.   If the evidence is merely
colorable, or is not significantly probative, summary judgment may
be granted." *Id.* at 249-50 (citations omitted).

     In reviewing a motion for summary judgment, the court "is not
to weigh the evidence but is instead required to view the evidence
in the light most favorable to the party opposing summary judgment,
to draw all reasonable inferences in favor of that party, and to
eschew credibility assessments." *Amnesty Am. v. Town of W.
Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*,
101 F.3d 845, 854 (2d. Cir. 1996)); *accord Tolan v. Cotton*, 572
U.S. 650, 651 (2014) ("[I]n ruling on a motion for summary
judgment, '[t]he evidence of the nonmovant is to be believed, and
all justifiable inferences are to be drawn in his favor.'"
(alteration in original) (quoting *Anderson*, 477 U.S. at 255)).

     The moving party has the burden of establishing the absence
of a genuine dispute as to any material fact, and in opposing
summary judgment, the nonmoving party "need only present evidence
from which a jury might return a verdict in his favor" to defeat

a motion for summary judgment. *Anderson*, 477 U.S. at 256-57. To meet this burden, however, a party opposing summary judgment must "come forward with specific facts showing that there is a *genuine issue for trial*," not merely "show that there is some metaphysical doubt as to the material facts." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

Because Plaintiff is *pro se*, the court is obliged to liberally construe Plaintiff's submissions and read them "to raise the strongest arguments they suggest." *Campbell v. We Transport, Inc.*, 847 F. App'x 88, 88-89 (2d Cir. 2021) (quoting *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017)). Plaintiff's *pro se* status, however, "d[oes] not eliminate [her] obligation to support [her] claims with some evidence to survive summary judgment." *Nguedi v. Fed. Reserve Bank of N.Y.*, 813 F. App'x 616, 618 (2d Cir. 2020). Plaintiff's "reliance on 'conclusory allegations' and 'unsubstantiated speculation'" will not suffice. *Id.* (quoting *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

## DISCUSSION

Defendant seeks summary judgment as to Plaintiff's remaining failure to accommodate claims under the NYSHRL and NYCHRL because "Plaintiff was not disabled under any law or statute and there is

11

no record evidence to indicate that she asked for an accommodation because of any disability." (Def. Mem. at 1.) Plaintiff opposes Defendant's motion, arguing that it ignores "medical conditions that applied [sic] to all pregnant women." (Pl. Mem. at 3.) Plaintiff concedes that "no healthcare provider diagnosed her with an abnormal pregnancy-related condition that needed to be treated" but argues that Defendant was on notice of her pregnancy, and therefore her disability. (*Id.*) Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Defendant is entitled to summary judgment, and Plaintiff's claims are accordingly dismissed.

## I. Plaintiff's Failure to Accommodate Claims

To maintain a prima facie claim under the NYSHRL and NYCHRL for failure to accommodate, "an employee must show that: '(1) [s]he is a person with a disability under the meaning of [the relevant statute]; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, the employee could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)); *see also Nieblas-Love v. New York City Hous. Auth.,* 165 F. Supp. 3d 51, 73 (S.D.N.Y. 2016) (explaining that the same standard for a prima facie case based on failure to accommodate exists under

12

the ADA, NYSHRL, and NYCHRL); *Snowden v. Trustees of Columbia Univ.*, 612 F. App'x 7, 10 (2d Cir. 2015) (summary order) (analyzing a failure to accommodate claim under the NYCHRL). Here, Defendant argues that the Court need not go further than the initial inquiry – regarding whether Plaintiff has a disability, impairment, or condition covered under the statute – to find that Plaintiff's claim fails. (Def. Mem. at 8-9.) The Court agrees.

Under New York Executive Law § 296, it is an "unlawful discriminatory practice for an employer . . . to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of an employee . . . in connection with a job or occupation sought or held." N.Y. Exec. Law § 296(3)(a). "Disability" is defined as "a physical, mental or medical impairment . . . which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques." *Id.* § 292(21); *see also Giordano v. City of New York*, 274 F.3d 740, 753 (2d Cir. 2001) (noting that the definition of disability under the NYSHRL is broader than the ADA definition). A "pregnancy-related condition" is any "medical condition related to pregnancy or childbirth that inhibits the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques." N.Y. Exec. Law § 292(21-f). "Thus, an individual can be disabled under the [NYSHRL] if his or her

13

impairment is demonstrable by medically accepted techniques; it is not required that the impairment substantially limit that individual's normal activities." *Lovely H. v. Eggleston*, 235 F.R.D. 248, 260 (S.D.N.Y. 2006) (internal quotation marks and citation omitted); *see also Giordano*, 274 F.3d at 754 (no requirement for plaintiff to show that the disability "substantially limits a major life activity").

Under the NYCHRL, "disability" is defined as "any physical, medical, mental or psychological impairment, or a history or record of such impairment." N.Y.C. Admin. Code § 8-102. "[P]hysical, medical, mental, or psychological impairment" is, in turn, defined as:

> (1) An impairment of any system of the body; including, but not limited to: the neurological system; the musculoskeletal system; the special sense organs and respiratory organs, including, but not limited to, speech organs; the cardiovascular system; the reproductive system; the digestive and genitourinary systems; the hemic and lymphatic systems; the immunological systems; the skin; and the endocrine system; or

> (2) a mental or psychological impairment.

*Id.* § 8-102(16)(b).

As stated in this Court's previous order on Defendant's motion to dismiss, courts in the Second Circuit generally find that pregnancy itself is not necessarily a disability requiring accommodation. *See, e.g., LaBarbera v. NYU Winthrop Hosp.,* 527 F. Supp. 3d 275, 303 (E.D.N.Y. 2021), *appeal dismissed* (2d Cir. July

14

7, 2021) ("[P]regnancy itself is not a statutory 'pregnancy-related condition.'"); *Sam-Sekur v. Whitmore Grp., Ltd.,* No. 11-CV-4938 (JFB)(GRB), 2012 WL 2244325, at *7 (E.D.N.Y. June 15, 2012) (collecting cases).  New York state courts likewise have concluded that a normal pregnancy, on its own, does not qualify as a disability within the meaning of the NYSHRL or NYCHRL.  *Krause v. Lancer & Loader Grp., LLC*, 965 N.Y.S.2d 312, 322–23 (New York County Sup. Ct. 2013) ("This court has found no cases in this or other departments, nor does plaintiff cite any, holding that a [normal] pregnancy qualifies as a disability within the meaning of the State or City Human Rights Law."); *see also Cameron v. New York City Dep't of Educ.*, No. 15-CV-9900 (KMW), 2018 WL 1027710, at *13 (S.D.N.Y. Feb. 21, 2018) ("No court has held that a normal pregnancy qualifies as an 'impairment' under NYCHRL § 8-102(16)(B) or that discrimination against a woman on the basis of normal pregnancy is a form of 'disability' discrimination under the NYCHRL.").

In light of the above precedent, the Court finds unavailing Plaintiff's arguments that *any* woman in the post-partum period should be considered to have a disability.  (*See* Pl. Mem. at 3.) Plaintiff concedes in her Memorandum of Law that "no healthcare provider diagnosed her with an abnormal pregnancy-related condition that needed to be treated." (*Id.*)  Plaintiff's primary argument continues to be that the "picker" role is "dangerous and

15

harmful" to "women who are pregnant or are [in] their postpartum period" and therefore Amazon was negligent in allowing Plaintiff or similarly-situated women to perform the role. (*Id.* at 5.)  This claim is essentially identical to the state common law negligence claim that this Court previously dismissed in granting Defendant's motion to dismiss – a claim which was explicitly barred because such claims are "precluded by the exclusive remedy provisions of New York's Workers' Compensation statute." *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 138 (2d Cir. 2001).

Plaintiff gave birth on January 20, 2019, and then subsequently returned to work in early April 2019. (Def. 56.1 ¶¶ 4-6.)  Plaintiff did not receive any medical treatment after the birth of her baby, and her doctor did not provide her with any instructions regarding limitations on activity post-birth. (Pl. Dep. at 121.)  Plaintiff asserts that many postpartum women suffer from "ligament laxity," (Pl. Mem. at 3), but Plaintiff offers no evidence to suggest that she personally suffered from the condition after giving birth.  Plaintiff likewise does not suggest that she had a risky or complicated birth that led to continuing medical issues. *See McMyler v. Bank of Utica*, No. 19-CV-812 (MAD), 2021 WL 2778830, at *3 (N.D.N.Y. July 2, 2021) (granting summary judgment to defendant on NYSHRL disability discrimination claim where "[t]here is no evidence that Plaintiff suffered a [] risky or complex birth").

Plaintiff does not have a disability or "pregnancy-related condition," as defined by the NYSHRL, because she fails to offer evidence showing an inhibited "normal bodily function" specific to her, or a condition that is "demonstrable by medically accepted clinical or laboratory diagnostic techniques." *See* N.Y. Exec L. §§ 292(21), (21-f). Similarly, Plaintiff does not have a disability as defined by the NYCHRL because she failed to offer evidence showing an "impairment of any system of the body." N.Y.C. Admin. Code § 8-102(16)(b). Furthermore, as stated previously, "pregnancy itself is not a statutory pregnancy-related condition" in and of itself. *LaBarbera*, 527 F. Supp. 3d at 303. Plaintiff asserts only that she gave birth and was in the post-partum period, and standing alone, such assertions do not constitute evidence of disability. Because Plaintiff has failed to set forth any evidence showing that she had a "disability" within the meaning of the NYSHRL or NYCHRL the Court must, and does, find that her NYSHRL and NYCHRL failure to accommodate claims fail as a matter of law.

<u>**CONCLUSION**</u>

For the reasons stated above, Defendant's Motion for Summary Judgment is granted in its entirety, and Plaintiff's claims are dismissed with prejudice.

The Clerk of Court is respectfully directed to enter judgment in favor of Defendant and close this case. Defendant is ordered to serve a copy of this Memorandum and Order and the judgment on *pro se* Plaintiff and note service on the docket no later than two days after judgment is entered.

**SO ORDERED.**

Dated:     September 23, 2024
           Brooklyn, New York
                                    _____
                                    **HON. KIYO A. MATSUMOTO**
                                    United States District Judge
                                    Eastern District of New York

18